IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OHIO SECURITY INSURANCE
COMPANY,
           *Plaintiff*,

           v.                                              Case No. 24-4485

KEITH PRYER et al,
           *Defendants*.

MEMORANDUM

COSTELLO, J.                                               **March 23, 2026**

Plaintiff Ohio Security Insurance Company ("OSIC") sued Defendants Keith Pryer, Keith Pryer, LLC, and Niambi Lumpkin Pryer, seeking a declaration that it has no duty to defend or indemnify the Defendants in three underlying actions in the Philadelphia Court of Common Pleas. The Defendants have failed to respond or otherwise participate in this action. OSIC obtained an entry of default and now moves for a default judgment against the Defendants. For the reasons stated below, the Court will grant the motion.

I.      BACKGROUND

OSIC issued a commercial auto policy to Keith Pryer d/b/a/ Keith Pryer LLC that was effective from May 3, 2019, to May 3, 2020 (the "Policy").[1] ECF No. 5 ¶ 29, n.1. The Policy limits were $1,000,000 per accident liability, $1,000,000 uninsured motorist, and $30,000 for personal injury protection. *Id*. Pryer's then-wife, Niambi Lumpkin Pryer ("Lumpkin"), was the only driver listed on the Policy. *Id*. ¶ 30.

---

[1]     The Policy was originally issued to Keith Prior d/b/a/ Keith Prior LLC, but it was later corrected to Keith Pryer d/b/a Keith Pryer, LLC. ECF No. 5 ¶ 29, n.1.

On June 30, 2019, a vehicle driven by Marcos Lorenzo collided with a vehicle driven by Shalena Hill. *Id*. at ¶ 14. A vehicle insured under the Policy then collided with the vehicle driven by Lorenzo. *Id*. at ¶ 14; ECF No. 5-4 at 89. The Defendants maintained that Lumpkin was driving the vehicle insured under the Policy. *See* ECF No. 22-12 at 6; ECF No. 5 ¶ 15.

Three state-court actions followed. First, Hill and her passengers filed suit against Lorenzo, Lumpkin, Pryer, and Keith Pryer LLC (the "Company"). *See Hill et al v. Lorenzo et al*, No. 210602082 (Phila. Ct. Com. Pl.). Then, Lorenzo and his passengers filed suit against Pryer, the Company, Lumpkin, and Hill. *See Lorenzo et al v. Pryer et al*, No. 210602110 (Phila. Ct. Com. Pl.). Finally, Pryer filed suit against Lumpkin, Lorenzo, and Hill. *See Pryer v. Lumpkin et al*, No. 210602013 (Phila. Ct. Com. Pl.). OSIC is defending the Defendants in these actions, subject to a reservation of rights.[2]

The state court complaints allege that Lumpkin was driving the insured vehicle at the time of the accident. ECF No. 5 ¶ 14. Pryer and Lumpkin similarly maintained that Lumpkin was the driver. *Id*. ¶ 15. However, discovery in the underlying litigation revealed that Pryer was driving at the time of the accident, and that no one else was in the vehicle at the time.[3] Although the vehicle was insured, Pryer was not listed as a driver on the policy and did not have a valid driver's license. ECF No. 5 ¶¶ 30, 32; ECF No. 22-11 at 5.

OSIC filed this action seeking a declaration that the Policy is void and that it has no duty to defend or indemnify the Defendants in the underlying litigation. OSIC alleges that Pryer

---

[2]   The Defendants failed to respond to OSIC's reservation of rights letters dated March 6, 2023, March 23, 2023, and June 21, 2021. ECF No. 5 ¶ 58.

[3]   Testimony from Hill and her passenger revealed that Pryer, not Lumpkin, was driving the vehicle, and they did not see a woman at the scene. ECF No. 5 ¶¶ 16-17. Additionally, a video Hill took only depicts Pryer. *Id*. ¶ 16. OSIC also learned that only the driver's side air bag deployed, suggesting that there was no passenger. ECF No. 22-14 at 5; ECF No. 22-18 at 20.

made material misrepresentations and omissions when obtaining the Policy. Specifically, the application falsely stated that Lumpkin was employed by Pryer's business and would be the sole driver of the insured vehicle. ECF No. 5 ¶¶ 38-9. In addition, Pryer never disclosed that he did not have a valid driver's license. *Id*. ¶ 46. OSIC contends that it relied on the information provided by Pryer in deciding to issue the Policy and determining the policy premiums and limits. *Id*. ¶ 40-44. OSIC further contends that had it known the truth, it would not have issued the Policy or would not have issued it with the same premium rate or policy amount. *Id*. ¶ 45.

OSIC also alleges that the Policy is void because the Defendants filed a false claim related to the accident by stating that Lumpkin was driving the insured vehicle. The Policy's fraud and misrepresentation provision provides that the Policy is void if "you or any other 'insured', at any time, intentionally conceal or misrepresent a material fact concerning," among other things, the Policy, the covered auto, or any claim. ECF No. 5-4 at 47. Because Lumpkin was the only driver listed on the Policy, this misrepresentation was material to OSIC's coverage position. ECF No. 5 ¶ 60. OSIC contends it would not have undertaken defense or indemnity obligations had it known that Lumpkin was not the driver at the time of the accident. *Id*. ¶ 61.

To date, the Defendants have not entered an appearance, filed a responsive pleading, or otherwise defended this action. The Clerk of Court entered a default against the Defendants. ECF Nos. 17, 21. OSIC now moves for default judgment under Federal Rule of Civil Procedure 55(b). ECF No. 22.

## II.    SERVICE

Before the Court can enter default judgment, it must find that OSIC properly served the Defendants. *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). Under

3

Federal Rule of Civil Procedure 4(e)(1), service is proper if it complies with the laws of either the state where the district court sits or where service is actually made.

Pryer and the Company were served in Florida. ECF Nos. 10 & 11. Florida permits "substituted service" on an individual by leaving copies at their "usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents." FLA. STAT. § 48.031(1)(a). Process against a foreign limited liability company may be served upon any member or manager found within the state. FLA. STAT. § 48.062(3). Additionally, if the address for the member or manager is a residence, Florida law explicitly allows service to be made "in accordance with § 48.031"—the individual substituted service rule. FLA. STAT. § 48.062(4).

On November 9, 2024, a process server served both Pryer and the Company by leaving a copy of the summons and complaint with Pryer's co-resident at their residence in Wesley Chapel, Florida. The co-resident was 43 years old, and the process server informed her of the contents of the documents. ECF Nos. 10 & 11. Because Pryer is a member/manager of the Company and was served at his usual place of abode in Florida via a co-resident of suitable age, service on both Pryer and the Company complied with Florida law.

Lumpkin was served in South Carolina. ECF No. 19. South Carolina Rule of Civil Procedure 4(d)(1) allows for service at an individual's dwelling or usual place of abode "with a resident of suitable age and discretion then residing therein." S.C. R. CIV. P. 4(d)(1). The rule does not define "suitable age," but the South Carolina Supreme Court has found that service on a 15-year-old was proper. *MCC Fin. Servs. v. Duffel*, 220 S.E.2d 127, 128 (S.C. 1975); *see also Wells Fargo Home Mortg. v. Salas*, No. 2006-UP-177, 2006 WL 7285829, at *1-2 (S.C. Ct. App.

4

Mar. 29, 2006) (finding service of defendant's 11- or 12-year-old stepson proper where defendant failed to offer evidence that his stepson was not a person of suitable age and discretion).

A process server served Lumpkin's daughter, who is in her twenties, on March 13, 2025, at their dwelling in Myrtle Beach, South Carolina. ECF No. 19. Accordingly, service of Lumpkin complied with South Carolina law.

## III.    JURISDICTION

In addition to determining that Defendants were properly served, the Court must also evaluate its jurisdiction over the subject matter and the parties. *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (citations and internal quotation marks omitted). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. OSIC is a New Hampshire corporation with a principal place of business in Massachusetts, and the Defendants reside in Florida. ECF No. 5 ¶¶ 5-8. Although Lumpkin has since moved to South Carolina, she remains a diverse party. The policy limit is $1,000,000 per incident, and three state court actions were filed because of the accident. *Id*. ¶¶ 5-8, 29.

The Court also has personal jurisdiction over each Defendant. A district court may assert personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits. FED. R. CIV. P. 4(e); *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Pennsylvania's long-arm statute permits courts to exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 PA. CONS. STAT. ANN. § 5322(b). Under the due process clause of the Fourteenth Amendment of the United States Constitution, personal jurisdiction is proper so long as the nonresident defendants have "certain minimum contacts . . . with [Pennsylvania] such that the maintenance

of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Personal jurisdiction can be either general or specific.  *Sandy Lane Hotel Co.*, 496 F.3d at 317.  The Court does not have general personal jurisdiction because there are no allegations that any Defendant had continuous and systematic contacts with Pennsylvania.

To determine whether specific personal jurisdiction exists, a court first considers whether the defendant "purposefully directed [its] activities at the forum," and whether the litigation arises out of or relates to at least one of those activities." *Sandy Lane Hotel Co.*, 496 F.3d at 317 (internal quotations and citations omitted).  If these initial requirements are satisfied, a court may consider whether the exercise of jurisdiction "comport[s] with fair play and substantial justice." *Id*.  The Supreme Court has emphasized that the relatedness factor requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Super. Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 265 (2017).

The Court has specific personal jurisdiction over each Defendant.  OSIC alleges that the Defendants' forum-based activities gave rise to this declaratory judgment action.  Specifically, Pryer operated the Company's vehicle on Pennsylvania roadways and was involved in an accident with Pennsylvania residents.  Lumpkin and Pryer then reported that Lumpkin was driving the vehicle at the time of the accident, causing OSIC to assume their defense in the underlying litigation under the Policy.  Lumpkin and Pryer participated in the underlying litigation and maintained their misrepresentations throughout those proceedings.  Because this action arises directly from Defendants' contacts with the forum, the Court may exercise specific personal jurisdiction.  In short, Defendants made misrepresentations related to an accident that

occurred in Pennsylvania, involved Pennsylvania residents, and subjected them to suit in Pennsylvania courts.  They should reasonably expect to be haled into court in this forum.

## IV.    THE DECLARATORY JUDGMENT ACT

The Declaratory Judgment Act ("DJA") provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  "[A] district court may abstain from hearing a declaratory judgment action that is properly within the court's subject matter jurisdiction."  *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196 (3d Cir. 2021).  In determining whether to exercise jurisdiction under the DJA, the Court first determines whether a parallel state proceeding exists.  *Kelly v. Maxum Specialty Ins. Group*, 868 F.3d 274, 282 (3d Cir. 2017) (internal citation omitted).  It then balances the applicable factors from *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 144 (3d Cir. 2014).

The existence of a parallel state proceeding weighs heavily against exercising jurisdiction.  *Kelly*, 868 F.3d at 282 (citing *Reifer*, 751 F.3d at 144).  A parallel state proceeding is a pending matter involving the same parties and presenting the same state law issues.  *Kelly*, 868 F.3d at 284 (citation omitted).  The underlying state court proceedings are not parallel to this matter.  OSIC is not a party in any of the three underlying state actions.  Those actions involve liability for the accident at issue while this matter involves OSIC's duty to defend or indemnify the Defendants under the Policy.  The ultimate resolution of the underlying actions would not resolve the issues raised here.  Therefore, there is no parallel state proceeding.

The Court next considers the relevant *Reifer* factors, including:

(1)    the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2)    the convenience of the parties;

(3)    the public interest in settlement of the uncertainty of obligation;

(4)    the availability and relative convenience of other remedies;

(5)    a general policy of restraint when the same issues are pending in a state court;

(6)    avoidance of duplicative litigation;

(7)    prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

(8)    (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Kelly*, 868 F.3d at 282-83 (footnote omitted) (quoting *Reifer*, 751 F.3d at 146).

These factors weigh in favor of exercising jurisdiction. First, a declaratory judgment will eliminate the uncertainty of OSIC's obligations. Second, no party will be inconvenienced by having the matter adjudicated here, because the underlying actions are pending in a state court in this District. The third factor is neutral because the only public interest at stake appears to be the usual interest in fair adjudication, which this Court is equipped to address. *See Kelly*, 868 F.3d at 288. The fourth factor also weighs in favor of exercising jurisdiction because OSIC is not a party to the underlying state actions. Accordingly, requiring it to seek relief there now would require the filing of a new action, causing unnecessary delay and a waste of judicial resources. The fifth and sixth factors similarly favor exercising jurisdiction as the issue of OSIC's obligations under the policy is not being litigated in state court, and the issues here are distinct. Regarding the seventh factor, there is no evidence of procedural fencing. Finally, the eighth factor does not weigh against exercising jurisdiction because any potential conflict of interest between OSIC's position here and what might be raised in state court would exist regardless of the forum. After balancing these factors, the Court will exercise its discretion to resolve OSIC's

obligations under the Policy. *See Zurich American Ins. Co. v. Gutowski*, 644 F. Supp. 3d 123, 136-37 (E.D. Pa. 2022) (exercising jurisdiction over duty to defend or indemnify action after finding that no parallel state proceeding existed and the *Reifer* factors did not outweigh the lack of parallel state proceeding).

## V.    LEGAL STANDARD FOR DEFAULT JUDGMENT

Where, as here, the Clerk of Court has entered default against a party pursuant to Federal Rule of Civil Procedure 55(a), a district court is authorized to enter default judgment against a properly served defendant who fails to file a responsive pleading. *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). A party is not entitled to default judgment as of right; rather, the entry of default judgment is left to the discretion of the court. *Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp. 2d 599, 604 (E.D. Pa. 2009) (citation omitted).

In order to grant default judgment, the Court first considers "whether the unchallenged facts constitute a legitimate cause of action." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270 (E.D. Pa. 2014). "[T]he court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, as well as all reasonable inferences that can be drawn therefrom." *Id.* (citations omitted). However, "[c]onclusory allegations and the parties' legal theories or 'conclusions of law' are not entitled to the same presumption and are not deemed admitted." *Id.* at 270-71. The Court then considers: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

9

**VI.    DISCUSSION**

    **A.    OSIC's Complaint Establishes a Legitimate Cause of Action**

OSIC seeks a declaration that the policy is void because the Defendants made material misrepresentations in obtaining the Policy and when reporting the accident.  If the Policy is void, OSIC contends that it has no duty to defend or indemnify the Defendants in the underlying actions.

    1.    Misrepresentations in the Policy Application

Under Pennsylvania law, an insurance policy is void *ab initio* if "(1) the insured made a false representation; (2) the insured knew the representation was false when it was made or the insured made the representation in bad faith; and (3) the representation was material to the risk being insured."  *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 129 (3d Cir. 2005) (citations omitted).  A misrepresentation is material if its disclosure would have caused the insurer to refuse the risk altogether or to demand a higher premium.  *New York Life Ins. Co. v. Johnson*, 923 F.2d 279, 281 (3d Cir. 1991) (citing *McCaffrey v. Knights & Ladies of Columbia*, 63 A. 189 (Pa. 1906)).  The insurer bears the burden of proving these elements by clear and convincing evidence.  *Babayan*, 430 F.3d at 129.  To determine whether a policy is void, a court may consider evidence beyond the policy and underlying state-court complaints.  *See Burkert v. Equitable Life Assur. Soc. of Am.*, 287 F.3d 293, 298 (3d Cir. 2002) (considering medical treatment records before declaring a policy void *ab initio*).

A determination that the policy is void results in "the abrogation, from inception, of all obligations" between the parties.  *See Berkley Assurance Co. v. Colony Ins. Co.*, 858 F. App'x. 561, 567 (3d Cir. Apr. 27, 2021).  This effectively "unmakes" the contract.  *Id*. (citation omitted).  An insurer cannot have a duty to defend under a policy that no longer exists.  *See U.S. Fidelity*

*and Guar. Co. v. Lee Investments*, *LLC*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("With no effective policy in place, there was no duty to defend."). Finally, because the duty to defend is broader than the duty to indemnify, the absence of a duty to defend necessarily precludes any duty to indemnify. *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016).

The Policy is void *ab initio* because it was obtained through knowing, material misrepresentations and omissions. Specifically, Pryer falsely stated that Lumpkin would be the sole driver of the vehicle for business purposes, and he omitted that he lacked a valid driver's license. ECF No. 5 at ¶¶ 30, 32, 46-47. In truth, Lumpkin had no role at the Company and Pryer drove the insured vehicle at the time of the accident. *Id*. ¶¶ 38, 46-7. These misrepresentations and omissions were material to the risk insured because OSIC relied upon them to issue the Policy and determine the premium rates and limits. *Id*. ¶¶ 40-43, 48-51. Had OSIC known the truth, it would not have issued the Policy, or at the very least, would not have done so under the same terms. *Id*. ¶¶ 45, 52. Because the Policy is void *ab initio*, the contract is effectively unmade. OSIC cannot have a duty to defend or to indemnify under a policy that no longer exists.

2.      Misrepresentations in Reporting the Accident

"Pennsylvania courts have long held that a violation of the fraud and concealment provision of an insurance policy serves as a complete bar to the insured's recovery under the policy," effectively voiding it. *State Auto Prop. & Cas. Ins. Co. v. Sigismondi Foreign Car Specialists, Inc.*, 533 F. Supp. 3d 268, 273 (E.D. Pa. 2021) (quoting *Millard v. Shelby Cas. Ins. Co.*, No. 3:CV-02-1902, 2005 WL 2035860, at *4 (M.D. Pa. Aug. 24, 2005)). To void a policy based on statements made during the post-loss investigation, the insurer needs to establish the elements of falsity, knowledge, and materiality by a preponderance of the evidence. *Hanna v. Palisades Prop. & Cas. Ins. Co.*, No. 23-1051, 2025 WL 964254, at *3 (E.D. Pa. Mar. 31, 2025).

11

A "statement is material if it 'concerns a subject relevant and germane to the insurer's investigation as it was then proceeding,' or 'if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented.'" *Wezorek v. Allstate Ins. Co.*, No. 06-1031, 2007 WL 2264096, at *15 (E.D. Pa. Aug. 7, 2007).

Here, OSIC has alleged material misrepresentations sufficient to void the Policy, namely that the Defendants claimed Lumpkin was driving the insured vehicle at the time of the accident. The Policy explicitly stated it would be void if, among other things, any insured concealed or misrepresented a fact in any claim for coverage. ECF No. 5-4 at 47. Falsely claiming that Lumpkin was driving the vehicle caused OSIC to defend and indemnify the Defendants in the underlying state court actions. Had it known that Pryer was driving, OSIC would not have undertaken these obligations. ECF No. 5 ¶¶ 60-61. Under these circumstances, the Policy is void under its own provision, and OSIC does not have a duty to defend or indemnify.

### B.      The *Chamberlain* Factors

Having determined that OSIC has established a legitimate cause of action, the Court turns to consideration of the *Chamberlain* factors. These factors weigh in favor of default judgment. First, OSIC will be prejudiced if the Court does not enter a default judgment. OSIC would be forced to continue to defend the underlying litigation even though the Defendants made sufficient misrepresentations to void the Policy obligating it to do so. As a result, the prejudice prong strongly weighs in favor of granting default. *See Great Am. E & S Ins. Co. v. John P. Cawley, Ltd.*, 866 F. Supp. 2d 437, 441 (E.D. Pa. 2011) (prejudice prong strongly favored granting default where plaintiff's purpose in commencing action was to resolve the uncertainty of its obligations in the underlying action).

Second, the Defendants do not appear to have a litigable defense. As noted above, they made material misrepresentations both in obtaining the Policy and in reporting the accident. Additionally, "the court may presume that an absent defendant who has failed to answer has no meritorious defense." *Joe Hand*, 3 F. Supp. 3d at 271-72 ("[I]t is not the court's responsibility to research the law and construct the parties' arguments for them"). This factor therefore favors granting default.

Finally, the Defendants have not appeared in this case. Accordingly, the third factor weighs in favor of granting default or is, at the very least, neutral. *See State Farm Fire & Cas. Co. v. Hunt*, No. 14-6673, 2015 WL 1974772, at *5 (E.D. Pa. May 4, 2015) (determining factor was neutral where defendant's motivations for not participating were unclear); *see also Joe Hand*, 3 F. Supp. 3d at 272 (citation omitted) (observing that defendant's failure to engage in the process without explanation may qualify as culpable conduct with respect to the entry of a default judgment because concluding otherwise would "reward the recalcitrant or the oppositional and uncooperative."). Under these circumstances, the *Chamberlain* factors weigh in favor of granting OSIC's motion for default judgment.

## VII.   CONCLUSION

For the reasons set forth above, the Court finds that all considerations weigh in favor of entering default judgment against the Defendants. Accordingly, the Court will grant OSIC's motion for default judgment.

An appropriate Order follows.

**BY THE COURT:**

_____

MARY KAY COSTELLO, J.

13